IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JULIAN SAYBOR | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. |
| WELLS FARGO BANK, N.A. | ) | District Judge: |
| | ) | Magistrate Judge: |
| Defendants | ) | |

## COMPLAINT

Plaintiff, JULIAN SAYBOR, by and through his attorneys, Woerthwein & Miller files this Complaint against WELLS FARGO BANK, N.A. ("WFB" or "Wells Fargo Bank"), and states as follows:

## INTRODUCTION

1. Plaintiff seeks relief on how his mortgage loan was handled by Wells Fargo Bank. WFB purchases hundreds of millions of dollars in force-placed insurance coverage annually from Assurant, Inc., one of two force-placed insurers that together control approximately 99.7% of the American fore-placed insurance market, and passes the premiums for the coverage in their entirety on to borrowers whose voluntary homeowners' policies have lapsed. The premiums that WFB elects to pass on to its borrowers, however, cover more than the cost of insurance

1

necessary to cover the WFB's interest in the collateral for the borrowers' mortgage loans. The premiums are artificially inflated by WFB to include the cost of unearned "commissions" (kickbacks), as well as bundled administrative costs not properly charged to the borrower. WFB also passes on charges for unnecessary or "excess" coverage that is not required by law or the terms of the borrowers' mortgage loans. Plaintiff here challenges Defendant's fraudulent placement of forced-place insurance despite Plaintiff continuously having a voluntary insurance policy in place, and seeks to recover his damages through his claims of fraud, wrongful foreclosure, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, violations of the federal Truth in Lending Act ("TILA"), Bank Holding Company Act ("BHCA"), and Racketeer Influenced and Corrupt Organizations Act ("RICO").

2. On November 10, 2010, *American Banker*, published an article describing major mortgage lenders' and servicers' questionable and often illegal practices related to fore-place insurance. The article revealed for the first time the exceptionally profitable exclusive relationships, collusive activities, and circular arrangements among the mortgage lenders and servicers, their affiliates, and their cooperating insurers.

3. Lenders and servicers force place insurance when a borrower fails to obtain or maintain proper hazard or flood insurance coverage on property that secures a loan. Under the typical mortgage agreement, if the homeowner's "voluntary" insurance policy lapses or provides

insufficient coverage, the lender has the right to "force place" a new policy on the property and then charge the premiums to the borrower.

4. The practices described in *American Banker* yield hundreds of millions of dollars in profits to the banks and insurers who implement them.

5. The money to finance these forced-placed insurance schemes comes from unsuspecting borrowers who are charged inflated force-placed insurance premiums by lenders and servicers. In many instances, borrowers are required to pay for backdated insurance coverage that covers periods during which no claims are made, or coverage that exceeds legal and contractual requirements, and are charged additional improper fees.

6. Although force-placed insurance is designed to protect the lender's interest in the property that secures the loan and thus should not exceed that interest, lenders often purchase coverage from their exclusive insurers in excess of that required to cover their own risk. And, as a matter of practice, the major lenders and servicers collude with the two major force-placed insurers to manipulate the force-placed insurance market and artificially inflate the premiums charged consumers, resulting in premiums up to *ten times* greater than those available to the consumer in the open market.

7. WFB's self-dealing in the force placed insurance market and fraudulent placement of force-place insurance on Plaintiff's property has caused substantial harm to Plaintiff.

## PARTIES

8. Plaintiff, JULIAN SAYBOR is a citizen of the State of Illinois. He is a natural person over the age of 21 and otherwise *sui juris*.

9. Defendant WELLS FARGO, N.A. is a national bank registered to do business in the State of Illinois with its principal address in San Francisco, California.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court is based on diversity of citizenship 28 U.S.C. 1332. There is complete diversity and the matters in controversy, exclusive of interest and costs, exceed the sum of $75,000.

11. Venue is proper in this forum pursuant to 28 U.S.C. 1391 because Defendant transacts business and may be found in this District. Venue is also proper here because at all times relevant hereto, Plaintiff resided in the Northern District of Illinois and a substantial portion of the practices complained herein occurred in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

12. At all times relevant hereto, WFB was the servicer of Plaintiff's Mortgage.

13. On or around September 2011, WFB force placed insurance on Plaintiff's escrow account. The forced placed insurance caused Plaintiff's regular mortgage payment of $3,336.50 to increase by $12,893.68. Plaintiff's new monthly mortgage payment became $16,230.18.

4

14. Plaintiff continued to make his regular monthly mortgage payment of $3,336.50 while disputing the unwarranted force placed insurance through multiple correspondences to WFB.

15. WFB never responded to Plaintiff's multiple correspondences regarding the force placed insurance of $12,893.68 a month.

16. On May 16, 2012, Plaintiff attempted to make a $4,000.00 mortgage payment at a WFB branch in Westchester, IL. The teller refused the $4,000.00 mortgage payment and demanded a payment of $16,230.18 plus fees.

17. On June 8, 2012 a Complaint for Foreclosure was filed against Plaintiff in the Circuit Court of DuPage County for the Eighteenth Judicial Circuit of Illinois.

18. On February 18, 2014, Plaintiff filed a Motion to Dismiss the Foreclosure Complaint. The Plaintiff's Motion was premised on WFB's mismanagement of Plaintiff's escrow account, which caused Plaintiff's monthly mortgage payment of $3,336.50 to increase to $16,230.18..

19. WFB responded to Plaintiff's motion by falsely stating in an affidavit that for the period of March 25, 2010 to March 24, 2012, Plaintiff was required to obtain forced placed property insurance for the mortgage Property at a cost of $91,082. Further, WFB falsely alleged a gap in Plaintiff's property insurance that occurred from March 25, 2010 to December 19, 2010. No such gap occurred. Plaintiff had a property insurance policy in place from December 19, 2009 to December 19, 2010 through Metropolitan Casualty Insurance Company.

20. Both Plaintiff and his insurance carrier put Plaintiff on notice of the insurance policy. Metropolitan Casualty Insurance Company sent a Declaration of Homeowners Insurance to WFB at: Wells Fargo Bank, N.A. #708, Its Successors and/or Assignees, P.O. Box 5708, Springfield, OH 45501-5708. Further, Plaintiff faxed the policy to WFB.

21. On January 6, 2015, the Honorable Judge Gibson of the Circuit Court of DuPage County for the Eighteenth Judicial Circuit of Illinois granted Plaintiff's motion to dismiss the Complaint of Foreclosure. The Court further advised WFB to provide Plaintiff with a reinstatement quote exclusive of late fees, foreclosure attorney's costs, and fees.

22. On July 14, 2015, WFB issued a letter to Plaintiff indicating that Plaintiff were to pay WFB $173,804.85 by August 7, 2015 in order to reinstate the loan from foreclosure. Contrary to the Court's advisement, the reinstatement amount included late charges, foreclosure fees, and unpaid escrow charges.

23. To date, WFB is holding Plaintiff's loan in foreclosure status.

24. WFB's fraudulent placement of forced-place insurance despite Plaintiff continuously having a voluntary insurance policy in place, has caused Plaintiff to incur unwarranted per diem interest from January 2012 to the present, unwarranted pre-acceleration late charges, hazard insurance late charges, cost of property inspection, attorney's costs and fees, and the cost of Plaintiff's foreclosure defense.

25. The actions and practices of WFB are unconscionable and undertaken in bad faith with the sole objective to maximize profits. Plaintiff was charged hyper-inflated and illegitimate non-competitive "premiums" for force-placed insurance that was never required under the terms of the Mortgage.

26. WFB refused and still refuses to cure the fraudulent placement of force-placed insurance on Plaintiff's escrow account.

27. WFB never disclosed that the unwarranted premium's excessive price included costs for kickbacks and unearned commissions, or administrative costs by the vendor.

## COUNT I-BREACH OF CONTRACT

28. Plaintiff, Julian Saybor, re-alleges and incorporates paragraphs 1-27 above as if fully set forth herein and further alleges as follows:

29. Plaintiff's mortgage requires that he maintains homeowner's insurance on his property and provides that if he fails to do so, then WFB may obtain insurance coverage to cover its risk and protect its rights in the property, "force place" the coverage, and charge the borrower its cost.

30. Plaintiff has continuously maintained homeowner's insurance on his property.

31. WFB breached the mortgage contract by, among other things, obtaining insurance coverage on Plaintiff's property when it was not entitled to do so.

32. WFB charged borrower premiums that included unearned "commissions" or kickbacks and other bundled administrative costs. These costs were not costs of coverage and

were not applied to protecting WFB's risk or rights in the collateral for borrower's mortgage loan. WFB breached the mortgage contract, by among other things, charging Plaintiff for force-placed coverage when it was not entitled to do so.

33. WFB has also breached its mortgage contracts by charging Plaintiff for excess and unnecessary force-placed insurance and that the coverage did not protect WFB's rights in its collateral or cover its risk.

34. Plaintiff has suffered damages as a result of WFB's breaches of contract.

WHEREFORE, Plaintiff, Julian Saybor, seeks compensatory damages resulting from WFB's breaches of contract, as well as injunctive relief preventing it from further violating the terms of the mortgage and any attempt to foreclose on Plaintiff's property. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT II- WRONGFUL FORECLOSURE

35. Plaintiff, Julian Saybor, re-alleges and incorporates paragraphs 1-27 above as if fully set forth herein and further alleges as follows:

36. As a proximate result of the negligent or reckless conduct of WFB, Plaintiff's credit has been impaired and he is threatened with the eminent loss of his property despite the fact he complied with all terms of the loan agreement until WFB refused his payments.

37. As a proximate result of the negligent actions of WFB, Plaintiff has suffered consequential damage and will continue to suffer additional damage in an amount to be fully proven at trial.

WHEREFORE, Plaintiff, Julian Saybor seeks compensatory and punitive damages resulting from WFB's negligent or reckless conduct, as well as injunctive relief preventing it from continuing to seek foreclosure. Plaintiff further seeks all relief deemed appropriate by this Court, including attorneys fees and costs.

## COUNT III-BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38. Plaintiff Julian Saybor, re-alleges and incorporates paragraphs 1-27 above as if fully set forth herein and further alleges as follows:

39. A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter of a contract in its performance.

40. Where an agreement affords a contracting party substantial discretion to make a decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

41. The mortgage agreements afford WFB substantial discretion in force placing insurance coverage, without defined standards. WFB is permitted to unilaterally choose the company from which it purchase force-placed insurance, and to purchase coverage in any amount and at any price. WFB has an obligation to exercise the substantial discretion afforded it in good faith, and not capriciously or in bad faith.

42. Plaintiff does not seek to vary the express terms of the mortgage contract, but only to insure that the WFB exercises its discretion of good faith.

43. WFB breached the covenant of good faith and fair dealing implied in is mortgage agreements by, among other things:

    (a) Manipulating the force-placed insurance market by selecting insurers that will artificially inflate premiums to include kickbacks to WFI and issue excess insurance coverage not necessary to cover WFB's risk, and by failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby insurance coverage is routinely purchased from Assurant and its affiliates without seeking a competitive price;

    (b) Exercising its discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting force- placed insurance policies with artificially inflated premiums to maximize its own profits;

    (c) Assessing inflated and unnecessary insurance policy premiums against Plaintiff and misrepresenting the need for a forced-place policy when Plaintiff was current on his own insurance policy pursuant to the Mortgage;

    (d) Allowing WFI to collect a percentage of the premiums charged to Plaintiff as a kickback and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(e) Charging Plaintiff for "commissions" when the insurance is prearranged and no commission is due;

(f) Charging Plaintiff for having the vendor perform its obligation of administering its mortgage portfolio which is not chargeable to Plaintiff;

(g) Force placing insurance coverage in excess of that required to cover the lender's interest in the property, or the balance owed on the loan;

(h) Failing to cure its fraudulent placement of force-placed insurance on Plaintiff's account and pursuing a wrongful foreclosure action;

44. As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff, Julian Saybor, seeks a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing. Plaintiff also seeks compensatory damages resulting from WFB's breaches of its duties. Plaintiffs further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT IV-VIOLATIONS OF THE TRUTH IN LENDING ACT 15 U.S.C. § 1601 *et. seq.*

45. Plaintiff Julian Saybor, re-alleges and incorporates paragraphs 1-27 above as if fully set forth herein and further alleges as follows:

46. Plaintiff's mortgage was a consumer credit plan secured by his principal dwelling, and was subject to the disclosure requirements of TILA, 15 U.S.C. §1601, *et. seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

47. WFB is a "creditor" as defined by TILA because it owned Plaintiff's mortgages and changed the terms of the mortgages so as to create a new mortgage obligation, of which WFB was the creditor.

48. Pursuant to TILA, WFB was required to accurately and fully disclose the terms of the legal obligations between the parties. 12 C.F.R. § 226.17(c).

49. WFB violated TILA, specifically 12 C.F.R. § 226.17(c) when it (i) added force-placed insurance to Plaintiff's mortgage obligations and failed to provide new disclosures; and (ii) failed at all times to disclose the amount and nature of the kickback, discount loan monitoring, and/or other profiteering involving WFC and/or its affiliates as a result of the purchase of force-placed insurance.

50. When WFB changed the terms of Plaintiff's mortgages to allow previously unauthorized kickbacks and insurance amounts in excess of WFB's interests in the property, it changed the finance charge and total amount of indebtedness, extended new and additional credit through force-placed insurance premiums, thus created a new debt obligation. Under TILA, WFB was then required to provide a new set of disclosure showing the amount of the insurance premiums (i.e. finance charges) and all components thereof. On information and belief, WFB increased the principal amount under Plaintiff's mortgages when it force-placed the insurance, which was a new debt obligation for which new disclosures were required.

51. WFB adversely changed the terms of Plaintiff's loans after origination in order to receive a kickback on force-placed insurance premiums. These kickbacks are not authorized in the mortgage in any clear and unambiguous way. WFC never disclosed to its borrower the amount of the commissions or other unearned profits paid to its affiliate.

52. WFB also violated TILA by adversely changing the terms of Plaintiff's loans after origination by requiring and threatening to force-place insurance when it was not necessary to protect its interest in the property securing mortgages.

53. Acts constituting violations of TILA are subject to equitable tolling because WFB's kickback and other unearned revenue-generating scheme was the subject of secret agreements among WFB and its affiliates and was concealed from borrowers.

54. Plaintiff has been injured and has suffered a monetary loss arising from WFB's violations of TILA.

55. As a result of WFB's TILA violations, Plaintiff is entitled to recover actual damages and a penalty of $500,000.00 or 1% of WFB's net worth, as provided by 15 U.S.C § 1640(a)(3).

**WHEREFORE,** Plaintiff, Julian Saybor, seeks a judgment un his favor against WFB awarding actual damages and a penalty of $500,000.00 or 1% of WFB's net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), as well as attorney's fees and costs to be paid by WFB, as provided by 15 U.S.C. § 1640(a)(3).

## COUNT V- BREACH OF FIDUCIARY DUTY

56. Plaintiff Julian Saybor, re-alleges and incorporates paragraphs 1-27 above as if fully set forth herein and further alleges as follows:

57. WFB holds funds in escrow on behalf of borrowers whose mortgage it services. These funds are designated for the purpose of paying insurance premiums when due, and any excess funds are to be returned to the above-named Plaintiffs and members of the Class under the terms of the mortgage agreements.

58. WFB is in a fiduciary relationship with Plaintiffs and receives a greater economic benefit from these escrow transactions than it would from a typical escrow transaction. Specifically, the debtor-creditor relationship transformed into a fiduciary relationship when WFB breached its fiduciary duty when it collected unlawful kickbacks or other compensation under the kickback scheme, as well as premiums for excess and unnecessary insurance coverage, which is clearly a greater economic benefit than what was contemplated under the mortgage.

59. WFB breached its fiduciary duties to Plaintiff by (1) not acting in his best interest when it profited from force-placed insurance policies that were purchased using escrow funds it held for the benefit of Plaintiff at the expense of Plaintiff, and (2) not disclosing the kickback scheme to Plaintiff.

60. These actions were undertaken by WFB in bad faith for its own benefit and was not intended to benefit Plaintiff.

61. As a direct of WFB's actions, Plaintiff has suffered injury in the form of unnecessary and inflated escrow charges by over $12,000 which led to Plaintiff's wrongful foreclosure.

**WHEREFORE,** Plaintiff Julian Saybor is entitled to damages for WFB's breach of its fiduciary obligations and misappropriation of escrow funds. In addition, Plaintiff is entitled to punitive damages because WFB acted in bad faith in deliberate or reckless disregard of Plaintiff and disregard of its obligation to hold Plaintiff's escrow funds in trust.

Dated: December 31, 2015

Respectfully submitted,
By: /s/Theodore A. Woerthwein

One of the Attorneys for the Plaintiff
Woerthwein & Miller
70 West Madison St, Ste 2675
Chicago, IL 60602
ARDC: 3055264
Phn: 312-654-0001
Fax: 866-524-9460
ted@wamlaw.com